UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HABIBAH ABDUL-HAKEEM, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:05-cv-01547 (VLB) |
| SMURFIT-STONE CONTAINER | : | |
| ENTERPRISES, INC., | : | |
|     Defendant. | : | January 24, 2008 |

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. #35]

The plaintiff, Habibah Abdul-Hakeem, filed this action against the defendant, Smurfit-Stone Container Enterprises, Inc. (Smurfit-Stone), after she resigned from her position as an account clerk. Abdul-Hakeem claims that she was constructively discharged from her employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u>, because she was subjected to sexual harassment and a hostile work environment. Smurfit-Stone has filed a motion for summary judgment. For the reasons given below, Smurfit-Stone's motion is GRANTED.

The following facts are relevant to Smurfit-Stone's motion for summary judgment. On April 16, 2000, Abdul-Hakeem began her employment with Smurfit-Stone. On March 15, 2002, another employee named James Keller gave Abdul-Hakeem a handwritten note that read as follows:

> Hi,
>     I don't know how to spell your name, Abeba? I just wanted to tell you in the nicest way possible how overwhelmingly

> beautiful you are, matched by that heavenly voice of yours, a simple greeting in passing with you sends me into a daze.
>
> I know these are just words on paper and you must have a loving husband who worships the ground you walk on, just as I have a loving wife and child.
>
> But since our super brief encounter yesterday, with you in those grey slacks, wow, I've been able to think of nothing else. Slowly my ability to reason is returning. It's good that I stay downstairs. If this letter upsets or offends you, please just say stop it. I do my best not to be like this anyway.

[Doc. #35, Ex. 1].

Abdul-Hakeem complained about the note to Keller's supervisor, who forwarded the complaint to Smurfit-Stone's human resources department. After that department interviewed Abdul-Hakeem and Keller, it gave Keller a warning and ordered him to stay away from Abdul-Hakeem's work area unless his job required him to be there. Keller was employed as an electrician and worked primarily in the building's basement, while Abdul-Hakeem worked on the first floor.

From March 15, 2002, until about May 12, 2003, Abdul-Hakeem and Keller had minimal interaction with each other. During that time period, Keller had to perform his job duties on the first floor of the building on several occasions, and Abdul-Hakeem alleges that Keller made eye contact with her at those times but did not speak to her or do anything else.

On approximately May 12, 2003, Abdul-Hakeem was operating the telephone switchboard in the receptionist's absence when Keller called to ask

her about the location of a meeting.  Keller called her because she was the editor of the company newsletter, and although she had mentioned the meeting in the newsletter, she had not given the meeting's location.  Abdul-Hakeem alleges that Keller also complimented her on the newsletter.  She then reported his call to the human resources department, which responded by changing the hours that she was assigned to cover the switchboard from the afternoon to the morning in order to minimize potential contact with Keller, who worked from 2 p.m. to 11 p.m.  The department also ordered Keller not to call the switchboard at all.

On September 18, 2003, Abdul-Hakeem saw Keller when she went into his basement work area to help a coworker find something.  Keller called out her name, approached her, and asked whether he could say "Hello" whenever he saw her.  Although Abdul-Hakeem told him he could do so, she alleges that she agreed to his request only because she felt intimidated.  She reported the incident to the human resources department and also reported for the first time that Keller had sent her an e-mail message on September 11, 2003.  The content of the message was "Thank you," and Keller had sent it in reply to Abdul-Hakeem's company-wide e-mail message regarding the second anniversary of the terrorist attacks of September 11, 2001.  Abdul-Hakeem then reported one last incident on September 26, 2003, in which Keller discussed a work-related matter with two other employees on the first floor within her earshot.  After considering the incidents of September 11 and 18, 2003, the human resources department gave Keller another warning, ordered him not to have any contact with Abdul-

Hakeem, and restricted his job duties so that he would not be assigned work on the first floor while Abdul-Hakeem was present in the building. The department determined that Keller's discussion with other employees on September 26, 2003, did not warrant any discipline.

No further incidents involving Abdul-Hakeem and Keller occurred after September 26, 2003. Abdul-Hakeem alleges, however, that Smurfit-Stone's management stopped communicating with her after the end of September 2003, creating a hostile work environment. She decided to step down as editor of the company newsletter on October 1, 2003, and then resigned from her employment with Smurfit-Stone on March 14, 2004.

Smurfit-Stone moves for summary judgment on the ground that Abdul-Hakeem has failed to establish that the actions of Keller and the management created an objectively hostile work environment such that she was compelled to resign. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir.

2006). "The moving party bears the burden of showing that he or she is entitled to summary judgment." Huminski, 396 F.3d at 69.

"A plaintiff's . . . claim for constructive discharge requires the plaintiff to prove that her employer deliberately and discriminatorily created work conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign." Ferraro v. Kellwood Co., 440 F.3d 96, 100-101 (2d Cir. 2006). "A hostile work environment claim requires a showing (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer. . . . The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. . . . This test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive. . . . As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. . . . Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness. . . . But it is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace. . . .

"In short, a plaintiff alleging a hostile work environment must demonstrate

5

either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment. . . .  To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse."  Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir. 2002).  "[C]onduct must be extreme to amount to a change in the terms and conditions of employment . . . ."  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Examining the totality of the circumstances in this case, the Court concludes that the actions of Keller and the management were not sufficiently severe or pervasive to alter the terms of Abdul-Hakeem's employment and create an objectively hostile work environment.  Keller's conduct over an eighteen-month period consisted of the following:  a handwritten note expressing romantic interest; eye contact; a telephone call regarding the omitted location of a business meeting; an e-mail message stating nothing more than "Thank you"; a request for permission to say "Hello" to Abdul-Hakeem, which she granted; and Keller's work-related discussion with two other employees conducted within Abdul-Hakeem's earshot.  As to the management, Abdul-Hakeem merely alleges that the management did not communicate with her following the final incident with Keller.  None of that conduct qualifies as extreme or pervasive.

Although Abdul-Hakeem stepped down as editor of the company newsletter, and the hours that she was assigned to cover the switchboard

changed from the afternoon to the morning, when Keller was not at work, neither of those events altered the terms or conditions of her employment as an account clerk. The decision to relinquish the editorship of the newsletter was voluntary, and the choice of the specific hours when she was assigned the temporary additional duty to cover the switchboard did not affect her job responsibilities or salary as an account clerk. "[A] schedule change standing alone does not constitute an adverse employment action." Ruhling v. Tribune Co., Docket No. CV 04-2430(ARL), 2007 WL 28283 at *10 (E.D.N.Y. Jan. 3, 2007) (citing cases).

The five and one-half month period between the last incident with Keller and Abdul-Hakeem's resignation also demonstrates the lack of a causal connection. If Keller's alleged harassment had been severe and pervasive, it is difficult to explain why Abdul-Hakeem would wait five and one-half months after the harassment ended in order to resign. None of the facts of the present case would have compelled a reasonable person to resign from her employment, and, therefore, summary judgment is warranted in favor of Smurfit-Stone.

Smurfit-Stone's motion for summary judgment [Doc. #35] is GRANTED. The Clerk is directed to CLOSE this case.

        IT IS SO ORDERED.

        /s/
        Vanessa L. Bryant
        United States District Judge

Dated at Hartford, Connecticut: January 24, 2008.